

**Dated: September 29, 2017.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 16-10437-TMD |
| THOMAS SHAWN ERICKSON | § | |
| VALERIE LYNN ERICKSON, | § | |
|     Debtors. | § | Chapter 7 |

| | | |
|---|---|---|
| MARTHA PRADO, | § | |
|     Plaintiff, | § | |
| | § | Adv. Proc. No. 16-01062-TMD |
| v. | § | |
| | § | |
| THOMAS SHAWN ERICKSON | § | |
| VALERIE LYNN ERICKSON, | § | |
|     Defendants. | § | |

### MEMORANDUM OPINION

A bankruptcy discharge will not discharge an individual from "debt . . . for money, property, [or] services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud."[1] In *Husky International Electronics, Inc. v. Ritz*,[2] the Supreme Court held that the

---

[1] 11 U.S.C. § 523 (a)(2)(A).
[2] 136 S. Ct. 1581, 1587-88 (2016).

1

term "actual fraud" could include fraudulent transfer schemes. But what if the fraudulent transfer scheme has no connection to the debt?

I. **FACTS**

Martha Prado, the plaintiff, owned a company called Optimum along with her ex-husband, James Prado.[3] In 2007, Optimum sold its assets to T&V Optimum ("T&V"), a company formed by Mr. and Mrs. Erickson (Thomas and Valerie), the debtors and defendants in this case.[4] The consideration included a promissory note, payable by T&V and guaranteed by the Ericksons.[5]

As part of her divorce from Mr. Prado, Ms. Prado received the T&V note.[6] In 2011, Ms. Prado sued T&V and the Ericksons.[7] Three years later, a mediation settlement agreement was signed.[8] Under this agreement, the debt was reduced to $475,000 and the Ericksons agreed to sign a new note and grant a lien on their vacation home.[9] But the note and mortgage were never signed, and Ms. Prado sought and obtained a $475,000 judgment against T&V and the Ericksons.[10] T&V then filed for bankruptcy under chapter 11 and completed a reorganization in 2015.[11] In April of 2016, the Ericksons filed for bankruptcy under chapter 7.[12]

Ms. Prado then filed this adversary proceeding seeking to except her claim against the Ericksons from their discharge and to prevent the Ericksons from receiving a discharge of their

---

[3] Compl. 1, ECF No. 1.
[4] *Id.*
[5] *Id.*
[6] Compl. 2, ECF No. 1.
[7] *Id.*; Mot. Summ. J. 5, ECF No. 22.
[8] Mot. Summ. J. Ex. 2, at 4, ECF No. 22-2.
[9] *Id.*
[10] Compl. 2, ECF No. 1; Mot. Summ. J. 6, ECF No. 22.
[11] Order Confirming First Amended Chapter 11 Plan, *In re T&V Optimum, LLC*, No. 14-52889 (Bankr. W.D. Tex. June 3, 2015), ECF No. 143.
[12] *In re Erickson*, No. 16-10437 (Bankr. W.D. Tex. filed Apr. 14, 2016).

other debts.[13] The Ericksons moved for a summary judgment against several of Ms. Prado's arguments.[14] In the argument relevant to this opinion, Ms. Prado contends that her claim should be excepted from the discharge on the basis of certain allegedly fraudulent transfers.[15] The Ericksons move for summary judgment on that cause of action because Ms. Prado obtained her claim through the guarantee and there is no connection between the guarantee and the transfers.[16]

## II. ANALYSIS

The parties agree that *Husky International Electronics, Inc. v. Ritz*[17] controls this issue but, of course, disagree on how. In *Husky*, a company named Chrysalis owed Husky $164,000 for parts sold by Husky to Chrysalis.[18] While this debt was incurred, an individual named Ritz, who was a director and 30% owner of Chrysalis, drained money from Chrysalis and transferred it to other companies in which Ritz had an interest.[19]

Husky sued Ritz, seeking to hold him personally liable for the debt that Chrysalis owed Husky.[20] This lawsuit was based on a Texas statute that allows creditors to impose personal liability on individuals for corporate debts where the individual has engaged in actual or constructive fraud.[21] The Fifth Circuit held that Ritz did not commit "actual fraud," within the meaning of section 523(a)(2)(A), when he took Chrysalis's money because a false representation

---

[13] Compl. 4-7, ECF No. 1.
[14] *Id.*; Mot. Summ. J. 7-9, ECF No. 22, seeking judgment against the arguments in paragraphs 24–27 and 29–32 of the complaint. In her response, Prado conceded that the Motion for Summary Judgment should be granted regarding the arguments in paragraphs 24 and 26 and paragraphs 29 through 32 of the complaint, but contends that there are genuine issues of material fact contained in paragraphs 25 and 27. Resp. to Mot. Summ. J. 1, ECF No. 28. The motion for summary judgment as to the argument in paragraph 25 was denied by Oral Ruling made on the date of this opinion. Thus, this Memorandum Opinion will only address the allegations in paragraph 27 of the complaint.
[15] Compl. 4, ECF No. 1.
[16] Reply to Resp. to Mot. Summ. J. 4, ECF No. 29.
[17] 136 S. Ct. 1581 (2016).
[18] *Id.* at 1585.
[19] *Id.*
[20] *Id.*
[21] *Id.* (citing Tex. Bus. Orgs. Code Ann. § 21.223(b) (West 2012)).

3

is required for a debt to be deemed nondischargeable under section 523(a)(2)(A).[22] Because this holding disposed of the claim, the Fifth Circuit did not reach the issue of whether the transfers were sufficient to trigger personal liability under the Texas statute.[23]

The Supreme Court reversed, holding that fraudulent transfer schemes like those engaged in by Ritz were encompassed within the term "actual fraud" under section 523(a)(2)(A).[24] In a lone dissent, Justice Thomas argued that because the statute specified that the debt could be excepted from discharge only "to the extent obtained by" actual fraud, the fraud must be present "at the inception" of the credit transaction.[25] Under the dissent's view, in order for the debt to Husky to be nondischargeable, the fraud had to be a part of the transaction in which Husky supplied the parts to Chrysalis.[26] Because the debt was incurred in the Chrysalis-Husky trade transactions that were unrelated to the transfers of Chrysalis cash to the Ritz companies, according to the dissent, the debt was not "obtained by" the fraud, as required by the statute, and so was not excepted from the discharge.[27]

The majority dismissed the "at the inception of" argument as imposing a reliance element that is not in the statute.[28] In response to the "obtained by" argument, the majority said this:

> It is of course true that the transferor does not "obtai[n]" debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. See, *e.g.*, *McClellan* v. *Cantrell*, 217 F.3d 890 (C.A.7 2000); see also *supra*, at 1587 – 1588. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance, see *Field,* 516 U.S., at 61, 116 S.Ct. 437; *post,* at 1591, will be nondischargable under § 523(a)(2)(A).[29]

---

[22] *Husky Int'l Elecs., Inc. v. Ritz*, 787 F.3d 312, 320 (5th Cir. 2015), *rev'd & remanded*, 136 S. Ct. 1581 (2016).
[23] *Id.* at 316-322.
[24] *Husky*, 136 S. Ct. at 1586.
[25] *Id.* at 1591.
[26] *Id.*
[27] *Id.*
[28] *Id.* at 1589.
[29] *Id.*

4

Thus, under *Husky v. Ritz* the debt must be at least "traceable to" the fraudulent transfer. Under the facts of *Husky*, this test is met. While the trade debt owed by Chrysalis to Husky largely predated and was otherwise not related to the fraudulent transfers, Ritz became personally liable to Husky for the debt under Texas law by causing the transfers; and so, in that sense, the debt was "obtained by," and certainly "traceable to" the transfers. Indeed, that is exactly what the bankruptcy court found on remand.[30]

Here, as in *Husky*, the Ericksons allegedly "obtained" property through a fraudulent transfer scheme.[31] Specifically, the complaint says they "(a) liquidated their nonexempt property; and (b) made unwarranted and gratuitous transfers from their wholly controlled corporations for the purpose of . . . rendering them insolvent."[32] But, unlike in *Husky*, there is no allegation in the complaint or in Ms. Prado's response to the summary judgment motion, by affidavit or otherwise, that there is any connection between the transfers mentioned in the complaint and the pre-existing debt owed by the Ericksons to Ms. Prado.[33] Indeed, the Ericksons incurred their debt on the T&V note through a guarantee when T&V bought the Optimum assets.[34] Thus, even if the assets allegedly transferred came from T&V, those transfers could have nothing to do with the debt that already existed. Since there is no connection between the debt and the transfers, the debt cannot be excepted from the discharge on this basis, and the summary judgment motion is granted to this extent.

---

[30] *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 762 (Bankr. S.D. Tex. 2017) (Bohm, J.) ("There is no question that the creation of this personal obligation is directly traceable to—i.e., resulted from—the Debtor's fraudulent actions in orchestrating the transfers of $1,161,279.90 out of Chrysalis's account and into the accounts of the Debtor–Controlled Entities.").

[31] Compl. 4 at paras. 26-27, ECF No. 1.

[32] Compl. 4 at para. 27, ECF No. 1.

[33] Other cases decided since *Husky v. Ritz* have also held that there must be a nexus between the fraudulent transfers and the debt for which the discharge exception is sought. *In re Wilson*, No. 16-30782, 2017 WL 1628878, at *8 (Bankr. N.D. Ohio May 1, 2017); *In re Carvalho*, Adv. No. 16-10001, 2016 WL 6794788, at *2 (Bankr. D.C. Nov. 15, 2016); *In re Vanwinkle*, 562 B.R. 671, 677-78 (Bankr. E.D. Ky. 2016).

[34] Compl. 1, ECF No. 1.

5

## III. CONCLUSION

The motion for summary judgment will be granted, in part and denied in part, by separate order in accordance with this memorandum opinion and the oral ruling made contemporaneously with this opinion.